The majority holds that the trial court abused its discretion in denying appellant's motion for a new trial because Ospina's testimony might be admissible in a second trial and that if such testimony were admitted, there is a strong probability of a different result. I respectfully dissent.
Ohio law is clear that defendant (appellant herein) has the burden of establishing that newly discovered evidence creates a strong probability of a different result in the event a second trial were conducted. State v. Hawkins (1993), 66 Ohio St.3d 339,350. Consistent therein, Ohio law is also clear that "[w]here on a motion for a new trial based on newly discovered evidence, [the defendant] seeks to introduce hearsay evidence which purports to be within the declarations-against-penal-interest exception to the hearsay rule, he must first establish the unavailability of the declarant." State v. Williams (1975), 43 Ohio St.2d 88, paragraph one of the syllabus.
Here, appellant failed to establish that Rodriquez was unavailable and failed to establish that Ospina's testimony would be otherwise admissible at a second trial. I believe that this failing (and the resulting uncertain nature of the admissibility of Ospina's testimony) tips the balance against finding an abuse of discretion in this case.
According to the majority, Ospina's testimony would be admissible under Evid.R. 804(B)(3) (statements against interest; declarant unavailable) because Rodriquez (the declarant) may be deemed unavailable at a second trial because appellant may not be able to procure Rodriquez's presence, or if procured, Rodriquez may refuse to testify by invoking his right against self-incrimination. Such a finding, however, is speculative given this record.
First, contrary to that suggested by the majority, appellant did not "earnestly but unsuccessfully" attempt to make Rodriquez available at the hearing below. The record indicates that Rodriquez is presently incarcerated in a federal prison. The record also indicates that defense counsel did not attempt to make Rodriquez available for the hearing until counsel filed a motion to convey with the United States District Court for the Southern District of Ohio on January 22, 1998, one week before the January 30, 1998 hearing. At that time, defense counsel was informed that the Southern District of Ohio no longer had jurisdiction over Rodriquez but that there were mechanisms through the United States Bureau of Prisons by which he could be located and transported to Franklin county. The record does not indicate that any of those steps had been taken by the date of the hearing, and appellant did not request a continuance in order to do so. Similarly, the majority speculates that if Rodriquez's attendance were procured, he would likely refuse to testify. The record is silent, however, as to whether Rodriquez intends to invoke his privilege. It is equally possible that Rodriquez would deny that he was involved in Marscio's murder and deny that he told Ospina otherwise. Nothing in the record indicates to the contrary.
Finally, the majority indicates that even if Rodriquez does testify at a second trial (and presumably does so inconsistently with Ospina's version), Ospina's testimony would be used to impeach Rodriquez through "vigorous examination" by appellant's counsel. This analysis, however, ignores the applicability of Evid.R. 607.
Under Evid.R. 607, the credibility of a witness cannot be attacked by the party calling that witness by means of a prior inconsistent statement except upon a showing of surprise and affirmative damage. See State v. Asher (1996), 112 Ohio App.3d 646,652 ("Evid.R. 607 requires `a showing of surprise and affirmative damage' before the court is authorized to declare a witness hostile and allow a party to impeach its own witness."). The very purpose of this rule is to prevent a party from calling "a known adverse witness simply for the purpose of getting a prior inconsistent statement into evidence by way of impeachment, thus doing indirectly what he could not have done directly." 1980 Staff Notes to Evid.R. 607; see, also, Asher at 653 ("The reason for this rule is to ensure that a party does not call a witness for the sole purpose of impeaching her with statements which would otherwise be inadmissible.").
Here, neither surprise nor affirmative damage would necessarily result from Rodriquez's testimony at a second trial. For example, if appellant's counsel were informed before a second trial that Rodriquez intended to deny his involvement with the murder, his subsequent testimony consistent therewith would not be considered a surprise at all. See State v. Holmes (1987), 30 Ohio St.3d 20
(surprise could not be shown when counsel had reason to believe that witness would recant when called to testify); Statev. Cantlebarry (1990), 69 Ohio App.3d 216, 222-223 (evidence was not a surprise when witness informed the investigating officers and others that her prior statement was a mistake). Similarly, if Rodriquez denies knowledge of or cannot remember the facts alleged in Ospina's testimony, Rodriquez's testimony would not be considered affirmatively damaging. See, generally, Dayton v.Combs (1993), 94 Ohio App.3d 291, 299 ("'Affirmative damage' is not shown where the witness denies knowledge of the facts contained in his prior statement or where he states that he does not remember the facts stated therein.").
In sum, the majority holds that the trial court abused its discretion in failing to grant appellant a new trial on the basis of hearsay that appellant failed to establish would be admissible (and may ultimately prove not to be admitted) at a second trial. Given that appellant had the burden to establish the admissibility of newly discovered evidence under Crim.R. 33 and the high standard of appellate review applicable in this matter, I cannot join the majority in this regard. I respectfully dissent.